# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

EDDIE FRANK FLOYD, III,

    Plaintiff,

v.

WARDEN DOUG WILLIAMS,

    Defendant.

CIVIL ACTION NO.: 6:15-cv-103

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Smith State Prison ("SSP") in Glennville, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et seq*. (Doc. 1.) Plaintiff filed his Complaint on September 4, 2015, alleging that Defendant prevented him from participating in SSP's Eid-ul-Fitr feast—a religious feast celebrating the end of Ramadan. (Id. at p. 3.) Plaintiff and Defendant both filed a Motion for Summary Judgment, (docs. 34, 36), and Responses to the respective Motions for Summary Judgment, (docs. 40, 44). For the following reasons, I **RECOMMEND** that the Court **GRANT** Defendant's Motion for Summary Judgment, **DENY** Plaintiff's Motion for Summary Judgment, **DISMISS** Plaintiff's Complaint, **DISMISS AS MOOT** all other pending Motions, and **DIRECT** the Clerk of Court to **CLOSE** this case. In addition, the Court should **DENY** Plaintiff leave to appeal *in forma pauperis*.

## BACKGROUND

On July 17, 2015, all Georgia Department of Corrections' ("GDC") inmates received a special holiday meal in observance of Eid-ul-Fitr. (Doc. 37, p. 5.) However, inmates at SSP

were also given the opportunity to pool their resources to have outside food delivered in addition to the GDC holiday meal. (Id.) The SSP general population inmates opted to do so and had their second celebratory meal on July 25, 2015.[1] Plaintiff and other Tier II inmates were not allowed to attend the general population celebration held on July 25th. (Id. at p. 6.)

After frivolity review, Plaintiff's Complaint was served upon Defendant based on Plaintiff's assertions that Defendant had prohibited him from partaking in any Eid-ul-Fitr feast. As such, Plaintiff's RLUIPA claims and First Amendment free exercise claims were allowed to proceed. (Docs. 11, 16.) However, his requested recovery was limited to injunctive relief under RLUIPA and injunctive relief and nominal damages under Section 1983.[2]

Plaintiff moved for summary judgment on August 19, 2016. (Doc. 34.) On the same day, Defendant also filed his Motion for Summary Judgment. (Doc. 33.) Both parties filed timely Responses. (Docs. 40, 44.)

## DISCUSSION

Defendant asserts in his Motion that Plaintiff's claims are moot and that Plaintiff's claims fail on the merits because: 1) his religious beliefs were accommodated; and 2) Defendant acted reasonably. (Doc. 38, pp. 3–10.) In moving for summary judgment, Defendant relies on his Statement of Material Facts, Plaintiff's prison files, affidavits, SSP's policies and procedures,

---

[1] Plaintiff does not oppose the fact that GDC provided a special holiday meal to all inmates on July 17, 2015. In fact, he makes no mention of this date at all. Instead, Plaintiff argues that GDC did not provide a special holiday meal on July 25, 2015. Defendants, in turn, do not oppose this; GDC provided the Eid-ul-Fitr feast as part of their master menu for all inmates on the day of Eid-ul-Fitr, July 17, 2015.

[2] To the extent Plaintiff made any substantive due process claims, those claims did not survive frivolity review.

2

and GDC memoranda on Ramadan procedures.[3]  As set forth below, I agree that Plaintiff fails to establish a genuine dispute as to his claims, and the Court should grant Defendant's Motion as a result.

I.  **Standard of Review**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial.  See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)).  In determining whether a summary judgment motion should be granted, a court must view the

---

[3] Plaintiff supports his Motion for Summary Judgment with copies of his grievances and the relevant responses, copies of Defendant's interrogatory responses, a copy of the master menu for July 25, 2015, and declarations from three other prisoners.  Plaintiff does not provide a Statement of Material Facts.

3

record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., 630 F.3d 1346, 1353 (11th Cir. 2011).

## II. Whether Plaintiff's Claims are Moot

Article III of the Constitution "extends the jurisdiction of federal courts to only 'Cases' and 'Controversies.'" Strickland v. Alexander, 772 F.3d 876, 882 (11th Cir. 2014). This "case-or-controversy restriction imposes" what is "generally referred to as 'justiciability' limitations." Id. There are "three strands of justiciability doctrine—standing, ripeness, and mootness—that go to the heart of the Article III case or controversy requirement." Harrell v. The Fla. Bar, 608 F.3d 1241, 1247 (11th Cir. 2010) (internal quotation marks and alterations omitted). With regard to the mootness strand, the United States Supreme Court has made clear that "a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992) (internal citation omitted). Accordingly, "[a]n issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." Friends of Everglades v. S. Fla. Water Mgmt. Dist., 570 F.3d 1210, 1216 (11th Cir. 2009) (internal quotation marks omitted). Questions of justiciability are not answered "simply by looking to the state of affairs at the time the suit was filed. Rather, the Supreme Court has made clear that the controversy 'must be extant at all stages of review, not merely at the time the complaint is filed.'" Christian Coal. of Fla., Inc. v. United States, 662 F.3d 1182, 1189–90 (11th Cir. 2011) (quoting Preiser v. Newkirk, 422 U.S. 395, 401 (1975)).

4

Defendant alerts the Court in his Motion for Summary Judgment that the GDC "has clarified its policy allowing Tier inmates to participate in secondary holiday meals donated for or purchased by inmates." (Doc. 38, p. 5.) Specifically, Defendant states that, in the future, GDC staff will deliver these extra meals to Tier cells and allow inmates the option of accepting or refusing the meal. (Doc. 37, p. 7–8.) Additionally, Defendant states the policy clarification was implemented in time for the 2016 Feast of Eid-ul-Fitr.

Because of these additional facts, Defendant now argues that "there is no meaningful relief for the court to give Plaintiff." (Doc. 38, p. 5.) However, under the doctrine of "'voluntary cessation,' a party choosing to end conduct alleged to be illegal does not necessarily deprive the tribunal of the power to hear and determine the case." Rich v. Sec'y, Fla. Dep't of Corr., 716 F.3d 525, 531 (11th Cir. 2013) (citing Harrell, 608 F.3d at 1265). "Since the defendant is free to return to his old ways, he bears a heavy burden of demonstrating that his cessation of the challenged conduct renders the controversy moot." Id. While it is true, as Defendant argues, that government actors enjoy a rebuttable presumption that the objectionable behavior will not reoccur, the Court must still evaluate several factors.

"First, we consider whether the termination of the offending conduct was unambiguous." Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga., 633 F.3d 1297, 1310 (11th Cir. 2011) (quotation marks omitted). "[T]he timing and content of the decision are . . . relevant in assessing whether the defendant's 'termination' of the challenged conduct is sufficiently 'unambiguous' to warrant application of the . . . presumption in favor of governmental entities." Harrell, 608 F.3d at 1266. "Second, we look to whether the change in government policy or conduct appears to be the result of substantial deliberation, or is simply an attempt to manipulate jurisdiction." Nat'l Ass'n of Bds. of Pharmacy, 633 F.3d at 1310. "Third,

5

we ask whether the government has 'consistently applied' a new policy or adhered to a new course of conduct." Id.

Having considered the above factors, the Court does not find that the government has unambiguously terminated its policy; thus, Plaintiff's claims are not moot. Specifically, the Court is unable to assess the "timing and content" of the GDC's decision. Although Defendant submits an affidavit that the GDC has since "clarified its policy," he does not indicate when this new policy was enacted, simply that it was made "prior to the 2016 Feast of Eid-ul-Fitr." (Doc. 37-4, pp. 6–7.) Additionally, Defendant fails to provide a copy of the updated policy, procedures, or any other supporting documentation regarding this new policy and whether it will in fact be "consistently applied" into the future. Moreover, as Plaintiff accurately points out in his Motion for Summary Judgment and his Response to Defendant's Motion for Summary Judgment, at the very least, his claims under Section 1983 cannot be mooted, as he was allowed to proceed for nominal damages. (Doc. 34, p. 6; Doc. 40, p. 2.); McKinnon v. Talladega Cty., Alabama, 745 F.3d 1360, 1362 (Plaintiff's claims for injunctive relief were mooted by his prison transfer, but "because his claim for damages remains alive, we are presented with a justiciable case or controversy.").

Accordingly, Plaintiff's claims are not moot, and the Court will proceed to evaluate Defendant's Motion for Summary Judgment on the merits.

**III.    Plaintiff's Claims Under the First Amendment**

The Free Exercise Clause of the First Amendment "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." Cutter v. Wilkinson, 544 U.S. 709, 719 (2005). Prisoners retain their First Amendment rights, including rights under the free exercise of religion clause; however, "lawful incarceration brings about the

necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Brunskill v. Boyd, 141 F. App'x 771, 774 (11th Cir. 2005) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)).

"To establish a violation of his right to free exercise," a plaintiff "must first establish that a state actor imposed a 'substantial burden' on his practice of religion." Wilkinson v. GEO Grp., Inc., 617 F. App'x 915, 917 (11th Cir. 2015) (citing Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater, 2 F.3d 1514, 1549 (11th Cir. 1993)). The defendant can then support his conduct on the ground that he applied a "neutral law of general applicability[.]" Emp't Div., Dep't of Human Res. of Or. v. Smith, 494 U.S. 872, 879 (1990)

Deference is given to prison officials, and, as a result, courts employ a "reasonableness" test to determine whether a regulation infringes on constitutional rights. Id. The Supreme Court has outlined four factors to be considered in determining the reasonableness of a regulation: (1) "whether the regulation has a valid, rational connection to a legitimate governmental interest;" (2) "whether alternative means are open to inmates to exercise the asserted right;" (3) "what impact an accommodation of the right would have on guards and inmates and prison resources;" and (4) "whether there are ready alternatives to the regulation." Turner v. Safley, 482 U.S. 78, 89–91 (1987). The fourth factor asks whether "a prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a *de minimis* cost to the valid penological goal." Overton v. Bazzetta, 539 U.S. 126, 136 (2003).

As an initial matter, it is clear the Defendant did allow Plaintiff to exercise his religious beliefs. Defendant states that the GDC provided an Eid-ul-Fitr feast on July 17, 2015, to all inmates as part of the master menu. Plaintiff appears to dispute this fact in his Motion for

7

Summary Judgment. He asserts, "According to the GDC Master Menu Exhibit G, the Kitchen Director did not provide a special menu for the Islamic holy day. All inmates were fed the same as the general population that was housed on Tier II." (Doc. 34, pp. 3–4.) However, Exhibit G is a copy of the menu for July 25, 2015—not the Islamic holy day. Although the general population inmates may have opted to celebrate with a second feast on July 25, 2015, the GDC was under no obligation to also provide a second feast as part of the master menu to fulfill their constitutional obligations. Additionally, Plaintiff's inability to partake in this second feast does not negate the fact that Plaintiff was able to celebrate the end of Ramadan on July 17, 2015, with a GDC provided Eid-ul-Fitr feast. Cf. Ford v. McGinnis, 352 F.3d 582, 594 (2d Cir. 2003) (no substantial burden because prison may have served a substitute Eid-ul-Fitr feast).

Additionally, SSP's policy of preventing Tier inmates from participating in general population events is reasonable. Defendant provides detailed safety and security concerns with commingling Tier and general population inmates, including specific information regarding Plaintiff's own disciplinary history.[4] (Doc. 38, pp. 7–8; Doc. 27, pp. 2–3.) Additionally, as explained above, Plaintiff did have "alternative means of exercising" his religious beliefs. Turner, 482 U.S. at 89. In fact, the GDC specifically provided the "other avenue" for Plaintiff to exercise his religious beliefs by including the Eid-ul-Fitr feast as part of their master menu for July 17, 2015.

Thus, SSP did not prevent Plaintiff from celebrating the Eid-ul-Fitr feast and consequently, prevent him from exercising his religious beliefs. Although Plaintiff may have desired to participate in the second feast paid for by the other inmates, his inability to do so does

---

[4] In fact, Plaintiff admits to, and is unapologetic of, his prolific disciplinary history. He states in his Response to Defendant's Motion that, "[a]fter [he] was denied his feast, Plaintiff cared less about a [disciplinary report] nor Administration [sic]. Plaintiff food was being unproperly fixed [sic] so Plaintiff did try to bribe officers to bring contraband in. . . ." (Doc. 40, p. 1.)

not rise to the level of a constitutional violation. Accordingly, the Court should **GRANT** Defendant's Motion for Summary Judgment and **DISMISS** Plaintiff's First Amendment claims.

## IV. Plaintiff's Claims Under RLUIPA

RLUIPA protects "any exercise of religion, whether. . . compelled by, or central to, a system of religious belief[.]" 42 U.S.C. § 2000cc–5(7)(A). Specifically, the RLUIPA prohibits policies that substantially burden religious exercise except where a policy: "(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000cc-1(a). A plaintiff bears "the initial burden of proving" a policy or action "implicates his religious exercise" and "substantially burdened that exercise of religion." Holt v. Hobbs, ___ U.S. ___, 135 S. Ct. 853, 862 (Jan. 20, 2015). Once a plaintiff meets this burden, the burden then shifts to the defendant to show that the policy is the least restrictive means of furthering a compelling government interest. 42 U.S.C. § 2000cc-2(b); Smith v. Allen, 502 F.3d 1255, 1276 (11th Cir. 2007), *abrogated on other grounds by* Sossamon v. Texas, 563 U.S. 277 (2011). A policy that requires prisoners to "engage in conduct that seriously violates [their] religious beliefs" constitutes a substantial burden on religious exercise. Holt, 135 S. Ct. at 862.

Here, the religious exercise at issue is the Eid-ul-Fitr feast. Defendant did not prohibit Plaintiff from participating in this religious exercise. Again, SSP provided a feast to all prisoners, including Plaintiff, on the actual day of Eid-ul-Fitr, July 17, 2015. Plaintiff's Complaint centers on his inability to participate in a second meal on July 25, 2015. However, Plaintiff has not demonstrated that participation in this second meal is sincerely based in a religious belief. See id. ("[A] prisoner's request for an accommodation must be sincerely based

9

on a religious belief and not some other motivation . . . ."). Thus, Plaintiff fails to demonstrate that Defendant acted in such a way to "implicate his religious exercise."

Additionally, even if Defendant implicated Plaintiff's participation in the Eid-ul-Fitr feast, Defendant did not "substantially burden[ ] that exercise of religion." Defendant did not entirely prevent Plaintiff from participating in the Eid-ul-Fitr feast. Rather, he provided a means for Plaintiff to participate in the feast on the actual day of Eid-ul-Fitr. Also, Plaintiff has not demonstrated that Defendant required Plaintiff to engage in conduct that seriously violates his beliefs by not allowing him to attend the additional feast. At most, Plaintiff has only established that Defendant's actions amount to an inconvenience, not a substantial burden.

Accordingly, the Court should **GRANT** Defendant's Motion for Summary Judgment and also **DISMISS** Plaintiff's RLUIPA claims.

## V. Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[5] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. See Fed. R. App. R. 24(a)(1)(A) ("A party who was permitted to proceed *in forma pauperis* in the district-court action, . . ., may proceed on appeal *in forma pauperis* without further authorization, unless the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith[.]") (italics supplied). An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to

---

[5] A Certificate of Appealability ("COA") is not required to file an appeal in a Section 1983 action. See Fed. R. App. P. 3 & 4; Morefield v. Smith, No. 607CV010, 2007 WL 1893677, at *1 (S.D. Ga. July 2, 2007) (citing Mathis v. Smith, No. 05-13123-A (11th Cir. Aug. 29, 2005) (unpublished)).

advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendant's Motion for Summary Judgment and Plaintiff's Response thereto, the Court should **DENY** Plaintiff's potential *in forma pauperis* status on appeal, as there are no non-frivolous issues to raise, and any appeal would not be taken in good faith.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **GRANT** Defendant's Motion for Summary Judgment, (doc. 36), **DENY** Plaintiff's Motion for Summary Judgment, (doc. 34), **DISMISS** Plaintiff's Complaint, **DISMISS AS MOOT** all other pending Motions, and **DIRECT** the Clerk of Court to **CLOSE** this case. In addition, the Court should **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be

served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO REPORTED** and **RECOMMENDED**, this 29th day of December, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA